UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MICHAEL O'CONNOR, VIRL ANDRICK,
DONNA VILLELLA, and STEPHAN                    INDEX NO. 10-CV-7239 (PAE)
LUKER on behalf of themselves and other
similarly situated,

               Plaintiffs,

               v.

THE INSTITUE OF CULINARY
EDUCATION, INC. and RICHARD
SMILOW,
               Defendants.


------------------------------------------------------------x
### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Matthew D. Kadushin
D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
*Attorneys for Plaintiffs and the Class*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ iii

I.    **INTRODUCTION** ................................................................................................ 1

II.   **BACKGROUND** ................................................................................................ 1

   A.   **The Lawsuit** ................................................................................................ 1

   B.   **Discovery And Litigation** ............................................................................ 2

   C.   **Settlement** ................................................................................................... 4

   D.   **Release Of Claims** ....................................................................................... 6

   E.   **Factors Considered In The Settlement Of The Claims** ................................ 6

   F.   **Class Members' Response To Settlement** ..................................................... 7

III.  **ARGUMENT** ...................................................................................................... 7

   A.   **The Proposed Rule 23 Settlement Should Be Approved** ............................. 7

     i.   **The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved** ............................................................................. 8

       a.   **Procedural Fairness** ............................................................................. 8

       b.   **Substantive Fairness** ........................................................................... 9

         1.   **The Complexity, Expense, And Likely Duration Of The Litigation (*Grinnell* Factor 1)** ............................................................. 10

         2.   **The Reaction Of The Class To The Settlement (*Grinnell* Factor 2)** ............................................................. 11, 11

         3.   **The Stage Of The Proceedings And The Amount Of Discovery Completed (*Grinnell* Factor 3)** ............................................................. 11

         4.   **The Risks Of Establishing Liability (*Grinnell* Factor 4)** .................. 12

         5.   **The Risks Of Establishing Damages (*Grinnell* Factor 5)** ................ 14

**6.      The Risks Of Maintaining The Class Action Through The Trial (*Grinnell* Factor 6)** ................................................................................. 14

**7.      The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7)** ................................................................................. 15

**8.      The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9)** ........................................................... 15

**ii.     The Notice To Class Members Meets The Requirements Of Rule 23** .................. 16

**B.    Service Fees Should Be Awarded To Seven Plaintiffs** ................................................ 17

**C.    The Claims Administrator's Fees Should Be Approved** ............................................. 19

**D.    Class Counsel's Attorneys' Fees And Costs Should Be Approved** ........................... 19

**i.     Class Counsel's Requested Fee Award Is Reasonable** ..................................... 21

**a.    The *Goldberger* Factors** ........................................................... 22

**1.    Counsel's Time And Labor** ...................................................... 22

**2.    The Litigation's Magnitude And Complexity** ....................................... 23

**3.    The Risks Of Litigation** ......................................................... 23

**4.    Quality Of The Representation** .................................................... 24

**5.    The Fee Is Reasonable In Relation To The Settlement** ............................. 24

**6.    Public Policy Considerations** .................................................... 25

**IV.    CONCLUSION** ................................................................................. 25

## TABLE OF AUTHORITIES

## Cases

*Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ............................. 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974) .............................................. 8, 9, 10

*D'Amato v. Watman*, 236 F.3d 78 (2d Cir. 2001) ........................................................... 7

*D.S. v. N.Y. City Dep't of Educ.*, No. 05-Civ-4787, 2008 U.S. Dist. LEXIS 96034
    (E.D.N.Y. Nov. 25, 2008) .............................................................................. 14, 15

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ 10271, 2011 U.S. Dist. LEXIS 11931
    (S.D.N.Y. Jan. 20, 2011) ..................................................................................... 9

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................................... *passim*

*Garcia v. La Revise Assocs. LLC*, 2011 U.S. Dist. LEXIS 3325 (S.D.N.Y. Jan. 13, 2011) ........ 12

*Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05-CV-3452, 2008 U.S. Dist. LEXIS 23016
    (S.D.N.Y. Mar. 24, 2008) .............................................................................. 8, 24

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89-Civ-5386,
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991) ........................................ 14

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................... 20, 21, 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011(9th Cir. 1988) ........................................... 8

*Hicks v. Morgan Stanley & Co.*, No. 01-Civ-10071, 2005 U.S. Dist. LEXIS 24890
    (S.D.N.Y. Oct. 19, 2005) ............................................................................... *passim*

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)............. 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ...................................... 9, 21

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).................... 23, 24

*In re Greenwich Pharm. Sec. Litig.*, No. 92-Civ.-3071, 1995 U.S. Dist. LEXIS 5717
    (E.D. Pa. Apr. 27, 1995) ................................................................................. 25

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ................................. 14

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538
    (D. Conn. July 20, 2007) ................................................................................. 24

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173,
   2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .............................................. 11, 12, 15

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................... *passim*

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ........................................................ 16

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................... *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ............................... 8

*Ramirez v. Lovin' Oven Catering Suffold, Inc.*
   2011 U.S. Dist. LEXIS 138475, at *6 (S.D.N.Y. Oct. 27, 2011) ........................................... 24

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587,
   2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ........................................................ 11

*Reyes v. Buddha-Bar NYC,* No. 08-CV-2494 (DF)
   2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. Mat 28, 2009) .................................................. 15,19

*Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70 (N.Y. 2008) ............................................... 2

*Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 36266 (S.D.N.Y. Mar. 22, 2011) ........................... 24

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co., 130 s. Ct. 1431 (2010)* ............................... 3

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ....................................... 18

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ...................................................... 6, 13

*Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409
   (S.D.N.Y. Sept. 14, 2012) ............................................................................................... 21, 22

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................... 20

*Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ................... 21, 23, 25

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004) ................................................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................... *passim*

*Webster v. Smithfield Assocs., LLC d/b/a Pastis Restaurant, et al*
   08 Civ. 166 (LTS) (S.D.N.Y. Mar. 9, 2009)........................................................................... 15

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................. 11

## **Statutes**

29 U.S.C. § 202(a) ...................................................................................................... 25

29 U.S.C. § 207 .......................................................................................................... 1,2

N.Y. Labor Law § 196-d ...................................................................................... 1,2,5, 13

N.Y. Labor Law § 650 .................................................................................................. 25

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

# I.  INTRODUCTION

Plaintiffs submit this memorandum of law in support of their motion for final approval of a proposed settlement in this wage and hour class/collective action ("Wage Action") brought on behalf of certain employees of The Institute of Culinary Education, Inc.,  ("The Institute of Culinary Education") and Richard Smilow (collectively, "Defendants").[1]  The settlement will resolve all claims before this Court pursuant to the proposed compromise set forth in a Joint Stipulation of Settlement and Release dated March 22, 2012 ("Settlement Agreement"). Defendants support this Application for Final Order and Judgment.

The Settlement Class is defined as all individuals who work or worked at Institute of Culinary Education as waiters, servers, chef assistants, or in other similar titles for Defendants at any time from September 20, 2004 to March 22, 2012 and who have not submitted an exclusion request form.  On May 31, 2012, the Court preliminarily approved the proposed settlement and ordered that the Settlement Notice be sent to all Class Members.

# II.  BACKGROUND

## A.      The Lawsuit

On September 20, 2010, Plaintiffs filed this lawsuit against The Institute of Culinary Education and its owner–operator, Richard Smilow, asserting that: (1) Defendants charged private cooking party patrons a mandatory gratuity/service charge but failed to fully distribute the gratuity/service charge to the service staff, in violation of New York Labor Law § 196-d ("§ 196-d"); and (2) Defendants failed to pay service employees the appropriate overtime rate under

---

[1] With this memorandum, Plaintiffs submit the October 16, 2012, declaration of Lacey Racines ("Racines Decl."), attaching as Exhibit 1 Notice of Proposed Class Action Lawsuit Settlement and Fairness Hearing (the "Notice"), attaching as Exhibit 2 a copy of the Supplemental Notice ("Supplemental Notice"), and attaching as Exhibit 3 Notice Packets mailed on July 17, 2012 that the Fairness Hearing had been rescheduled to November 1, 2012 (the "Notification Letters"); Plaintiffs also submit the declaration of Matthew D. Kadushin ("Kadushin Decl."), attaching thereto as Exhibit 1 a proposed Order, as Exhibit 2 the Settlement Agreement in this action, and as Exhibit 3 an Addendum to the Joint Stipulation of Settlement and Release.

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.  Plaintiffs brought this action on behalf

of themselves and all other individuals who worked as waiters, servers, chef assistants, or in

other similar titles for Defendants within the last three years for the FLSA claim and within the

six years prior to the filing of this lawsuit for the New York claim.

Plaintiffs alleged, *inter alia*, that they and the putative class members did not receive the

entire gratuity/service charge that Defendants charged customers and that they were entitled to

receive the entire gratuity/service charge because customers would reasonably believe that

charge to be a gratuity.  Under § 196-d, as clarified by the New York State Court of Appeals in

*Samiento v. World Yacht, Inc*., 10 N.Y.3d 70 (2008), any charge that a reasonable customer

would believe was a gratuity must be distributed in its entirety to the service staff working that

event.  Thus, Plaintiffs alleged that by retaining part of the gratuity/service charge, the

Defendants violated § 196-d.  Plaintiffs also alleged that Defendants did not pay them the proper

overtime rate for overtime hours worked.  Specifically, Plaintiffs contended that Defendants

failed to include in their regular rate of pay, upon which their overtime rates would be calculated,

the monies they received as distribution of the service charge.   Plaintiffs alleged that this

conduct violated the Fair Labor Standards Act, ("FLSA"). Plaintiffs sought, among other things,

the tips unlawfully retained, unpaid wages, restitution, penalties, prejudgment interest, liquidated

damages, post-judgment interest, and attorneys' fees and costs.

**B.      Discovery And Litigation**

By the time that the case was resolved, the parties had completed discovery.  Joseph and

Kirschenbaum LLP ("JK" or "Class Counsel") ultimately reviewed and analyzed thousands of

documents produced by Defendants, including initial event invoices, final event invoices,

customer order forms, and advertisements. (Kadushin Decl. ¶ 3.)   In addition, JK reviewed

hundreds of emails between event coordinators and prospective customers, as well as hundreds of pages of payroll records. (*Id.*) Plaintiffs also served subpoenas on various customers of Defendants to review other communications between Defendants and their customers. (*Id.*)

In addition to document discovery, JK frequently conferred with the named Plaintiffs about their hours and compensation and the inner workings of The Institute of Culinary Education. (*Id.* at ¶ 4.) JK also deposed Defendant Smilow and several key employees of The Institute of Culinary Education with knowledge of Defendants payroll practices and Defendants' communications with customers concerning the service charges. Defendants deposed all four of the named Plaintiffs. (*Id.* at ¶ 5.)

In or about August of 2011, the parties began discussing settlement. However, given the distance between each party's positions at that time, the settlement discussions reached an impasse. (*Id.* at ¶ 6.) It was only after the parties completed discovery that the parties resumed settlement discussions. (*Id.*)

On January 10, 2012, the parties participated in a full-day mediation session before Ruth Raisfeld, Esq., an experienced wage and hour mediator. (*Id.* at ¶ 7.) Defendant Smilow; Brian Aronowitz, an executive with The Institute of Culinary Education; and the four named Plaintiffs attended the mediation. (*Id.*) The mediation lasted well into the evening, when the parties ultimately reached a resolution. (*Id.*) At the conclusion of the mediation, the parties drafted and executed a Memorandum of Understanding. (*Id.*) Over the next two months, the parties continued to fine-tune the terms and conditions of the settlement, negotiating extensively over the language of the settlement terms until the parties reached the agreed upon and executed the final Settlement Agreement. (*Id.*)

C.      **Settlement**

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of One Million Dollars ($1,000,000.00) (the "Maximum Settlement Amount").  The Maximum Settlement Amount covers attorneys' fees and costs, awards to Class Members, individual service awards to the four named Plaintiffs, and the fees and costs generated by the claims administration process.[2]  The claims administrator ("Claims Administrator") was and will be responsible for mailing the notice to Class Members, mailing the claim forms, and distributing the settlement checks. (Settlement Agreement § 2.1.)

Within thirty (30) days of the Effective Date of the Settlement Agreement, the Claims Administrator will mail the claim form to all Class Members who did not opt out ("Qualified Class Members").  Those Qualified Class Members who timely return their claim forms within ninety (90) days of this second mailing (the "Claimants") will be entitled to a share of the settlement fund.  (*Id.* at §§ 1.4, 2.4.)

The Claims Administrator will analyze The Institute of Culinary Education's payroll records, and award a point for each dollar of tips earned by a Class Member between September 20, 2004 and the date the Settlement Agreement was executed.  Five-sixths (83.33%) of the Net Settlement Fund (the "Period One Pool") will be distributed to Claimants who worked for Defendants between September 20, 2004 through March 31, 2008 ("Period One").  The Period One Pool will be divided by the total number of Points earned by all Qualified Class Members during Period One to determine the value of a Period One Point.  The number of Period One Points earned by each individual will then be multiplied by the value of a Period One Point to

---

[2] The Maximum Settlement Amount minus the amounts sought for attorneys' fees and costs, the service award for the four named Plaintiffs, and the costs of administration is referred to as the "Net Settlement Fund."  (Settlement Agreement § 1.17.)

determine the amount each Qualified Class Member is entitled to claim from the Period One Pool.

The remaining one-sixth (16.667%) of the Net Settlement Fund (the "Period Two Pool") will be distributed to Claimants who worked for Defendants between April 1, 2008 and the date the Settlement Agreement was executed ("Period Two").  The Period Two Pool will be divided by the total number of Points earned by all Qualified Class Members during Period Two to determine the value of a Period Two Point.  The number of Period Two Points earned by each individual will then be multiplied by the value of a Period Two Point to determine the amount each Qualified Class Member is entitled to claim from Period Two.  Under no circumstances will any Claimant receive an individual settlement amount of less than $50.  (*Id.* at § 3.4.)

The settlement treats the hours that Class Members worked for the Defendants before and after April 1, 2008 differently because of changes Defendants implemented in or around April 2008.  Beginning on or around April 1, 2008, Defendants changed the explanation of the 20% charge in their event contracts.  These changes significantly reduce the Class's likelihood of success on the charges incurred after this period.[3]

The Settlement Agreement requires Defendants to deposit the One Million Dollar ($1,000,000.00) settlement payment into an escrow account within one week of the settlement Effective Date. (Settlement Agreement § 3.1.)  Within 60 days of the Effective Date of the

---

[3]  Prior to Plaintiffs filing the lawsuit, Defendants used three contracts that referred to the 20% charge at issue in different way.  Until January 2007, Defendants contract stated, "[a] 20% service charge will be added to your bill. Staff gratuities are included in this charge."  From January 26, 2007 until March 2008, Defendants' contract stated "[a] 20% service charge will be added to your final bill. Gratuities included in this charge are for waitstaff and chef assistants only."  In or around April 1, 2008, Defendants began using a contract that stated,  "[a] 20% service charge will be added to your final bill. See additional information on page 2."  Page two indicated, "[a] 20% service charge will be added to your account … Of this, 37.5% will be fully distributed to the waitstaff and chef assistants as gratuity. The remaining 62.5% of the service charge is not a gratuity distributed to service personal and is retained by the Company." In or around spring 2011, Defendants began using a contract that indicated that customers were charged a 7.5% "service staff fee" and 12.5% "operational fee." (Kadushin Decl. ¶ 8.)

settlement, the Claims Administrator will begin issuing and mailing a check to each Claimant for the total amount of his or her individual settlement amount.  (*Id.* at § 3.4.) The individual settlement amounts will be subject to tax withholding and/or reporting.  (*Id.* at § 3.5.)

**D.      Release Of Claims**

In return for the above consideration, all those Class Members who do not opt out of the Class, regardless of whether they submit a timely claim form, will release all of their wage and hour claims under federal and New York law -- including related claims for liquidated damages, interest and attorneys fees -- against each and all of the Defendants and all their related entities. (Settlement Agreement § 3.6.)

**E.      Factors Considered In The Settlement Of The Claims**

Plaintiffs weighed the weaknesses and complexities in this case against the benefit of receiving a large percentage of the damages sought without the risks of trial.  Specifically, after March 2008, Defendants began using a disclaimer in their contracts stating explicitly that the charges were not a gratuity. Thus, Plaintiffs believe that the Defendants could very well have prevailed on summary judgment for period.  *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 332 (S.D.N.Y. 2010) ("[N]o reasonable jury could find that a reasonable customer would believe that the service charge was a gratuity … [the] contract clearly delineates the 'service charge' from the 'gratuity' in the large print body of the contract[.]") In addition, Defendants testified that even prior to March 2008, they made clear that part of the service charge was not a gratuity.

The total damages for Period One were approximately one million dollars ($1,000,000), and the total damages for Period Two were approximately six hundred thousand ($600,000).[4] The distribution formula provides that roughly 83.33% ($833,333) of the Settlement Fund is

---

[4] The damages for the overtime claim were negligible and had little impact on total damages. Plaintiffs testified that Class Members rarely, if ever, worked overtime. As such, the damages for Period One and Period Two reflect were calculated using the service charges retained by Defendants.

attributable to Period One and roughly 16.67% ($166,666) is attributable to Period Two.

Accordingly, taken these factors into account, the settlement distribution provides for recovery of

roughly 83% of the damages for Period One and 27% for Period Two.

In short, Class Counsel have thoroughly analyzed Defendants' factual and legal defenses,

examined documents and other information produced by Defendants, reviewed the defenses and

documents with Plaintiffs and other Class Members, and assessed the strength of Defendants'

arguments.  Additionally, in considering the possibility of settlement, Plaintiffs and Class

Counsel accounted for the time, delay, and costs of trial and appeal.

**F.      Class Members' Response To Settlement**

Pursuant to the May 31, 2012, Court Order, the Claims Administrator mailed and

distributed the Settlement Notice to all potential Class Members.  (Kadushin Decl. ¶ 9.) The

time has expired for Class Members to opt out and/or object under the Agreement.  (*Id.* at ¶ 9.)

No Class Members have objected to or opted out of the settlement.  (*Id.* at ¶ 10.) Thus, there was

clear approval of the settlement.

**III. ARGUMENT**

**A.      The Proposed Rule 23 Settlement Should Be Approved**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any

compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified

class may be settled, voluntarily dismissed, or compromised only with the court's approval."

*D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).

Approval of a class action settlement is within the Court's discretion, "which should be

exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*,

576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew

any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must

stop short of the detailed and thorough investigation that it would undertake if it were actually

trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974).

> i.      **The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved**

In deciding whether to approve a settlement, courts consider the fairness of the settlement

by looking at the negotiating process that leads to the settlement and the substantive terms of the

settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Courts

examine the "negotiating process leading up to the settlement as well as the settlement's

substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions."

*Gilliam v. Addicts Rehab. Ctr. Fund.*, No. 05-CV-3452, 2008 U.S. Dist. LEXIS 23016, at *9

(S.D.N.Y. Mar. 24, 2008). The approval of a proposed class action settlement is a matter of

discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072,

1079 (2d Cir. 1998).  In exercising this discretion, however, courts should give "proper deference

to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1027 (9th Cir. 1988).

> a.      **Procedural Fairness**

A presumption of fairness arises where a settlement was "reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart

Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted).  Relevant factors include "[t]he

experience of counsel, the vigor with which the case was prosecuted, and the coercion or

collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*,

No. 01-Civ-10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal

quotation omitted).  If the settlement was achieved through experienced counsels' arm's-length

negotiations, a court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Here, Class Counsel are highly experienced in litigating complex wage and hour class and collective actions. (Kadushin Decl. ¶¶ 24, 25.) Further, this negotiation was vigorously fought, and settlement was reached by the parties after extensive discovery and negotiations between the Parties. The Parties only reached a settlement after a full day of private mediation. (*Id.* at ¶ 7.) *See also Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *2-3 (S.D.N.Y. Jan. 20, 2011) ("The assistance of an experienced class action employment mediator . . . reinforces that the Settlement Agreements are non-collusive.") Accordingly, this settlement is procedurally fair.

### b.   Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 117. These factors ought not be applied in a formulaic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell*

*Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).  Here, all the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

> ## 1.    The Complexity, Expense, And Likely Duration Of The Litigation (*Grinnell* Factor 1)

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005)(internal quotation omitted).  This case is no exception, as there are 207 Class Members, and claims have been brought under both federal and state statutes.  Further, Defendants hotly contested liability in this case.

Although the parties have already undertaken considerable expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay, including summary judgment motion practice.  A complicated trial would be necessary, featuring extensive testimony by Defendants, Plaintiffs, and numerous Class Members.  Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes.  A trial of the damages issues, even on a representative basis, would be costly and would further defer closure.  Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery.  This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2. The Reaction Of The Class To The Settlement (*Grinnell* Factor 2)

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that objects to and opts out of the settlement. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

Here, the Claims Administrator mailed the Settlement Notice to all Class Members. (Kadushin Decl. ¶ 9; Racines Decl. ¶¶ 8, 9, 16-18.) No Class Member objected to or opted out of the settlement. (*Id.* at ¶ 11; *Id.* at ¶ 20.) This favorable reception by the Class constitutes "strong evidence" of the fairness of the proposed Settlement and supports judicial approval. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement") (quoting *Ross v. A.H. Robbins, Inc.*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (only thirteen objections out of class of 3,500 is a "strong indication" of fairness).

## 3. The Stage Of The Proceedings And The Amount Of Discovery Completed (*Grinnell* Factor 3)

Courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The parties'

discovery here meets this standard as it was "an aggressive effort" to litigate the case
Specifically, the Parties completed formal discovery.

Class Counsel entered into the proposed Settlement Agreement with a thorough
understanding of their case after substantial discovery.  (Kadushin Decl. ¶¶ 3- 5.)  The discovery
process provided the parties with ample opportunity to familiarize themselves with the merits of
their positions.  Such knowledge of the "strengths and weaknesses of their cases" supports a
finding that the Settlement Agreement reached in this matter is the result of fair and reasonable
negotiation.  *See Frank*, 228 F.R.D. at 185 (holding that when counsel understands the "strengths
and weaknesses of their cases" through extensive discovery, this knowledge supports final
approval).  Consequently, Class Counsel were able to properly evaluate the strengths and
weaknesses of the claims and defenses and obtain an excellent result for Class Members.

### 4.    The Risks Of Establishing Liability (*Grinnell* Factor 4)

Although Plaintiffs believe their case is strong, it is also subject to considerable risk as to
liability and damages.  In evaluating the risks of establishing liability, a court must "assess the
risks of litigation against the certainty of recovery offered by the Settlement."  *In re Telik, Inc.*
*Sec. Litig.*, 576 F. Supp. 2d at 579.  Courts recognize that regardless of the perceived strength of
a plaintiff's case, liability is "no sure thing[.]"  *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal
quotation omitted).

Defendants asserted legal and factual defenses to the underlying claims in this lawsuit.
For example, during Period Two, Defendants' contracts included a strong disclaimer under
*World Yacht*. *See supra* n. 3 ("A 20% service charge will be added to your account … Of this,
37.5% will be fully distributed to the waitstaff and chef assistants as gratuity. The remaining
62.5% of the service charge is not a gratuity distributed to service personal and is retained by the

Company.") Defendants' argument was not inconsequential and Plaintiffs' ran the risk of losing on summary judgment for Period Two. *Spicer*, 269 F.R.D. at 332 ("[N]o reasonable jury could find that a reasonable customer would believe that the service charge was a gratuity … [the] contract clearly delineates the 'service charge' from the 'gratuity' in the large print body of the contract[.]")

Moreover, even for Period One, Defendants testified that sales representatives made clear that the service charge was not a gratuity. While Plaintiffs believe that their claims are meritorious, there is a real risk that a jury could view the case differently than Plaintiffs. Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed Settlement alleviates this uncertainty, and is therefore preferable to trial, which may result in a smaller per-plaintiff recovery.

Finally, after Plaintiffs and Defendants executed the Settlement Agreement, the New York State Senate passed legislation to amend § 196-d that could potential lead to retroactively eliminating Plaintiffs' claims. Specifically, the New York Senate legislation proposed:

> [A]mend[ing] the current labor law section 196-d to explicitly state that written notice shall be given to customers that mandatory service charges or any similar administrative fee, are not part of a gratuity if that charge, or only part of that charge is not to be distributed to any employees as a gratuity. The statement shall be written in ordinary language in no smaller than 12 point font and on the check or invoice in a type size similar to the surrounding text. **This bill will also remove any retroactive liability for any fees administered prior to the enactment of this bill that were not explicitly designated as service charges not to be counted as gratuities in writing.**

http://open.nysenate.gov/legislation/bill/S6299B-2011 (emphasis added). While the New York State Assembly did not pass similar legislation, it is possible that the issue will be revisited next

term. Should this or similar legislation become law, Plaintiffs' claims could be extinguished. Accordingly, this factor weighs heavily in favor of approval.

### 5.      The Risks Of Establishing Damages (*Grinnell* Factor 5)

Courts also consider the risks of establishing damages.  This risk is not insignificant. Defendants took the position that to determine damages a jury would need to asses the reasonable customer standard on a party-by-party basis.  Had Defendants' argument prevailed, it would have created a significant obstacle to Plaintiffs in establishing damages, and would have almost certainly resulted in a smaller award. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6.      The Risks Of Maintaining The Class Action Through The Trial (*Grinnell* Factor 6)

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05-Civ-4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89-Civ-5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.  Here, prior to reaching a settlement agreement, Plaintiffs had not yet moved for class certification. Defendants insisted that even if there were liability, such liability could only be established on a party-by-party basis depending upon each individual customer's reasonable belief. Accordingly, there was risk that the Court could have denied Plaintiffs' motion.

### 7. The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7)

Next, courts consider a defendant's ability to withstand a judgment greater than the settlement.  *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.  The fact that a defendant can withstand a greater judgment does not preclude a finding that the settlement was fair, reasonable, and adequate.  *Id.*  Although Plaintiffs are not fully aware of Defendants' financial condition, Defendants represented that they could not pay more than the agreed upon settlement.

### 8. The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9)

The final two *Grinnell* factors can be considered together.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *24.  "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S. Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455).  The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement.  "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (internal quotations and citations omitted).

Defendants have agreed to settle this case for a substantial amount, $1,000,000.00.  This represents 62% of the total damages in the case.  However, because of the substantial risks in prevailing on Plaintiffs' Period Two claims, the settlement distribution formula allocates the majority of the settlement funds to Period One damages.  Accordingly, under the settlement distribution formula, the settlement provides for the recovery of 83% of Period One damages and 27% of Period Two damages.  Class Members who worked regularly throughout the entire class period will receive between $25,000 - $35,000.  (Kadushin Decl. ¶ 12.)

Thus, while there is certainly a possibility that the Class may recover some more money, including penalties and the like, after trial, the Settlement provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road."  *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement Agreement.  Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

### ii.    The Notice To Class Members Meets The Requirements Of Rule 23

This Court already found that the notice met the requirements of Fed. R. Civ. P. 23(c)(2)(B).  The Claims Administrator mailed the Class Notice via first class mail all Class Members at their last known addresses as maintained by Defendants.  (Kadushin Decl. ¶ 9; Racines Decl. ¶¶ 8, 9) [5]   After conducting a skip trace (looking for new addresses with social

---

[5] Defendants did not have any contact or personal information (i.e., date of birth) for nine (9) class members. As a result, Defendants and Plaintiffs excuted a stipulation to addend the Settlement Agreement to exclude these individuals as class members. (Kadushin Ex. 4.) Under the stipulation, these individuals will not in any way be

security numbers), there were only ten class member for whom the Claims administrator could not locate a new address. (*Id.* at 18.)

**B.      Service Fees Should be Awarded to the Plaintiffs**

Under the proposed Settlement Agreement, and subject to the Court's approval, Counsel requests that the named Plaintiffs (Michael Connor, Virl Andrick, Donna Villella, and Stephan Luker) receive Six Thousand Dollars ($6,000.00) each in recognition of the services they rendered on behalf of the Class.  A court may grant service fees in a class action.  In doing so, a court will consider:

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the clam, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted).  Service fees "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Id.*

Plaintiffs spent considerable time and effort to assisting Class Counsel with the case, and they played an instrumental role in the prosecution of this action.  They reviewed documents, explained the relevant and necessary factual information to Class Counsel, evaluated Defendants' defenses, and identified potential witnesses.  (Kadushin Decl. ¶ 33.)  The Plaintiffs each spent a full-day being deposed by the Defendants and met with Class Counsel prior to their depositions to prepare. (*Id.* at ¶ 34.)

---

affected by the Settlement Agreement. Moreover, these individuals would have only recovered fifty (50) dollars each if they were included in the settlement.

Plaintiffs spent a full-day in private mediation with Class Counsel negotiating the settlement. *(Id.* at ¶ 36.) Additionally, after the Agreement was executed, Plaintiffs continued to assist Class Counsel. For instance, Plaintiffs spent hours reviewing on their own and with Class Counsel the class list and points provided by the Defendants. (*Id.* at ¶ 37.)   As a result Plaintiffs meticulous and ardent assistance, Class Counsel was able to rectify certain important mistakes. (*Id.*)   In Class Counsel's opinion, Plaintiffs' assistance went well beyond what was required and was instrumental in ensuring a just and fair resolution.

Furthermore, Plaintiffs who are all current employees of the The Institute of Culinary Education assumed significant risks in prosecuting this action.  In the employment context, where workers are often blacklisted if they are considered "trouble makers," class representatives are particularly vulnerable to retaliation.  *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded.").  Even where there is not a record of actual retaliation, service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members.  *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Because of their time, assistance, and subject to actual and potential retaliation, the payment to Plaintiffs are appropriate and justified as part of the overall Settlement.

C.     **The Claims Administrator's Fees Should Be Approved**

Pursuant to Court's May 31, 2012 Order, the Claims Administrator was retained by the Parties to administer the settlement.   The Claims Administrator's fees are estimated to be $15,000.  However, the Claims Administrator's precise fees cannot yet be determined, as it will do substantial additional work after settlement approval.  (Kadushin Decl. ¶ 39.)  Accordingly, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator, subject to Class Counsel's review of the Claims Administrator's invoices.

D.     **Class Counsel's Attorneys' Fees And Costs Should Be Approved**

Class Counsel seeks $5,596.00 in costs, and, $321,268.00 in attorney fees. Class Counsel's fees represent one-third of the settlement after deductions for costs and service fees, less $2,200.00[6] in payments to Class Members with nominal points, which Class Counsel have agreed to pay out of their attorneys' fees.

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *Id.*  The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature."  *Id.*  In this case, the Settlement Agreement authorized Class Counsel to receive one-third of the Settlement as attorneys' fees.

---

[6] Forty-four (44) class members have only a nominal number of points which results in them receiving fifty dollars ($50) under the Agreement. (Agreement § 3.4.) Class Counsel deducted twenty-two hundred dollars ($2,200) from their requested attorneys' fees to cover the minimum amount that each of these individuals will recover.

The Second Circuit permits a district court to calculate reasonable attorneys' fees by either the lodestar or percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* at 47. Once that calculation is complete, the district court has discretion to "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.*

Under the percentage method, the district court "sets some percentage of the recovery as a fee. In determining what percentage to award, courts look to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* (internal citation omitted). Under either method, the fee must be "reasonable," and "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.*

Although both the lodestar and percentage methods are permissible,

> [t]he trend in the Second Circuit recently has been to use the percentage method. The percentage method, though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition.

*Hicks*, 2005 U.S. Dist. LEXIS 24890, at *22-23 (internal citation omitted); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 586. Moreover, "the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003). This approach has recently been favored over the lodestar method (multiplying the number of hours reasonably billed to the class by a reasonable hourly rate, then applying a multiplier based on more

subjective factors), which the Second Circuit has recognized as an alternative.  *Goldberger*, 209 F.3d at 47, 50.  Under either method, the purpose is to award a "reasonable" amount, as determined by the district court's "sound discretion."  *Id.*

Nevertheless, even where the percentage method is used, "the lodestar remains useful as a baseline[,]" and the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.* at 50; *EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *53.

### i.     Class Counsel's Requested Fee Award Is Reasonable

Pursuant to the proposed Settlement Agreement, Class Counsel seeks an award of one-third of the settlement amount after costs and service fees, less $2,200.00 – or $321,268.00 – for attorneys' fees and $5,596.00  for costs incurred in this litigation.  (*See* Kadushin Decl. ¶ 28 for a summary of costs incurred.)  This request is consistent with the retainer agreements Class Counsel has with Plaintiffs.  Moreover, the percentage of the fund sought is consistent with the norms of class litigation in this circuit.  *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409, at * 13 (S.D.N.Y. Sept. 14, 2012) (Engelmayer, J.) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.")

Class Counsel invested over $163,872.50 worth of time in obtaining a fair settlement for the Class.  In addition to reimbursement of costs, Class Counsel now seeks $321,268.00, or a 1.96 multiplier of the lodestar.   When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney."  *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007).  In the Second Circuit, courts routinely use lodestar multiples between 3 and 5.  *Spicer*, 2012 U.S. Dist. LEXIS 137409, at *13 ("The

attorneys' fees awarded are a 3.36 multiplier of the lodestar, which is well within the range of reasonableness."). The multiplier of 1.96 that Class Counsel seeks is well within the range of multipliers awarded by this Court.

a.      The <em>Goldberger</em> Factors

Whether the percentage or lodestar method is used, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  209 F.3d at 50 (internal quotation omitted; alteration in original).

<strong>1.   Counsel's Time And Labor</strong>

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement.  Class Counsel fully litigated this case.  Here, Class Counsel conducted extensive investigation and prosecution of this case for more approximately one-and-a-half-years prior to settlement.  The time invested in obtaining discovery and crafting the Plaintiffs' case in anticipation of trial was a reasonable expenditure of Class Counsel's time.  *See, e.g., Maley*, 186 F. Supp. 2d at 371-372 (finding that investigation into the case, briefing of court documents, court appearances, and participation in settlement negotiation amounted to a reasonable expenditure of time).

Through constant contact with the Plaintiffs, Class Counsel kept the Plaintiffs informed and involved in the action.  *Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

22

Furthermore, Class Counsel took or defended seven depositions, met repeatedly with the named Plaintiffs and other Class Members, reviewed and analyzed tens of thousands of pages of documents produced by defendants, attended mediation, and engaged in extensive additional settlement negotiations.  (Kadushin Decl. ¶¶ 3-5.)

In their representation of the class, Class Counsel expended over 449.7 attorney hours and 70.5 paralegal hours.  (*Id.* at ¶ 27.)

### 2.   The Litigation's Magnitude And Complexity

There is an inherent complexity in beginning in or around April 2008, and Defendants argued that liability would have to be determined on a party-by-party basis.

### 3.   The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."  *Taft*, 2007 U.S. Dist. LEXIS, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (noting that "[t]he contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees"). Class Counsel took this case pursuant to a retainer agreement with the named Plaintiffs which stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery.  Had Plaintiffs not obtained a recovery, Counsel would have received no payment for their work.

This case is rife with mixed questions of fact and law.  As discussed, Defendants vigorously disputed whether the contracts had proper disclaimers.  Thus, the chance that Plaintiffs would have lost some or all of their claims is not insignificant.

#### 4.    The Quality of Representation

Class Counsel have extensive experience representing workers in wage-hour class actions and civil rights actions. (Kadushin Decl. ¶¶ 14-25.)  Class Counsel have "years of experience prosecuting and settling wage and hour class actions, and is well-versed in wage and hour law and in class action law." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2011 U.S. Dist. LEXIS 138475, at *6 (S.D.N.Y. Oct. 27, 2011). Class Counsel have a "record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on this case are competent and experienced." *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 36266, at * 6 (S.D.N.Y. Mar. 22, 2011).  Class Counsel used their experience to obtain an excellent result for the class.  *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class.").  Indeed, no Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."  *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Defendants were represented by Carolyn Richmond and Glenn Grindlinger of Fox Rothschild, experienced employment law attorneys.

#### 5.    The Fee Is Reasonable In Relation To The Settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit." *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement).  While this percentage could constitute a "windfall" in cases involving larger settlement funds, the

$1,000,000.00 fund in this case "does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at \*32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92-Civ.-3071, 1995 U.S. Dist. LEXIS 5717, at \*19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

### 6.  Public Policy Considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at \*26.  Moreover, given the relatively small recoveries of individual class members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations."  *Frank*, 228 F.R.D. at 181.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant final approval of the class action settlement, (2) approve service fees for the named Plaintiffs; (3) approve the Claims Administrator's expenses, and (4) award Class Counsel attorneys' fees and costs.

25

Dated: New York, New York
      October 25, 2012

**JOSEPH & KIRSCHENBAUM LLP**

By: /s/Matthew D. Kadushin
    Matthew D. Kadushin
    D. Maimon Kirschenbaum
    Josef Nussbaum
    233 Broadway, 5th Floor
    New York, New York 10279
    Telephone: (212) 688-5640

    *Attorneys for Plaintiffs and the Class*